**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**DREAMA F. MILLER,**

      **Plaintiff,**

**v.**                                    **Case No.: 1:13-cv-19083**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Summary Judgment and the Commissioner's Motion to Remand the Case. (ECF Nos. 13, 17).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for

Summary Judgment be **GRANTED**, that the Commissioner's Motion to Remand also be **GRANTED**, that the decision of the Commissioner be **REVERSED,** and that this case be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    Procedural History

On July 13, 2010, Plaintiff Dreama F. Miller ("Claimant"), filed applications for SSI and DIB, alleging a disability onset date of April 7, 2010, (Tr. at 160, 164), due to "fibromyalgia, right shoulder," bursitis in the right shoulder, bipolar disorder, knee problems, an ulcer, high cholesterol, and walking with a cane due to balance problems. (Tr. at 216). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 78, 83, 96, 99). Claimant filed a request for an administrative hearing, (Tr. at 102), which was held on March 8, 2012 before the Honorable Jeffrey J. Schueler, Administrative Law Judge ("ALJ"). (Tr. at 30-57). By written decision dated March 29, 2012, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 12-24). The ALJ's decision became the final decision of the Commissioner on May 16, 2013, when the Appeals Council denied Claimant's request for review. (Tr. 1-3).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed an Answer opposing Claimant's claim and a Transcript of the Administrative Proceedings, (ECF Nos. 10, 11), Claimant filed a motion for summary judgment, (ECF No. 13), and the Commissioner subsequently filed a motion to remand the case for further development by the Commissioner. (ECF No. 17). Consequently, the matter is fully briefed and ready for resolution.

## II.  __Claimant's Background__

Claimant was 51 years old at the time she filed the instant application for benefits, and 53 years old on the date of the ALJ's decision. (Tr. at 12, 160). She completed high school and communicates in English. (Tr. at 36). Claimant has prior relevant work experience as a dishwasher, a dietary aide, and a fast food worker. (Tr. at 49).

## III.  __Summary of ALJ's Decision__

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

3

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through September 30, 2010. (Tr. at 14, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since January 20, 2010, the alleged disability onset date. (Tr. at 15, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "joint pain, fibromyalgia, neurofibromatosis, obstructive pulmonary disorder, gastroesophageal

4

reflux disease (GERD), ulcer disease, right shoulder bursitis, osteoarthritis of the knees, hyperlipidemia, insomnia, and mood disorder." (Tr. at 15-17, Finding No. 3).

Under the third inquiry, the ALJ found that Claimant did not have any impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 17-19, Finding No. 4). Accordingly, he determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that she can never climb ladders/ropes/scaffolds; can only occasionally use ramps, climb stairs, balance, stoop, kneel, crouch, crawl and reach overhead; can frequently handle and finger objects; needs to avoid concentrated exposure to cold, heat, vibration, pulmonary irritants, chemicals, and hazards; needs work that is limited to simple, routine, repetitive tasks in a low-stress job defined as having only occasional decision-making and changes in work setting.

(Tr. at 19-22, Finding No. 5). At the fourth step, the ALJ determined that Claimant was unable to perform any past relevant work. (Tr. at 22, Finding No. 6). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in substantial gainful activity. (Tr. at 22-24, Finding Nos. 7-10). The ALJ considered that (1) Claimant was born in 1958, and was defined as an individual closely approaching advanced age; (2) she had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because her past relevant work was unskilled. (Tr. at 22-23, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform jobs that exist in significant numbers in the national economy, (Tr. at 23-24, Finding No. 10), including work as an addresser, an ampule sealer, and a call-out operator. (Tr. at 23). Therefore, the ALJ concluded that Claimant was not disabled as defined in the

Social Security Act, and was not entitled to benefits. (Tr. at 24, Finding No. 11).

## IV.   **Claimant's Challenge to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence because "the job[s] identified by the ALJ were not supported by the testimony and opinions of the vocational expert." (ECF No. 14 at 4). Claimant argues that the ALJ's reliance upon the vocational expert's testimony was misplaced given that the vocational expert's testimony was based upon a hypothetical RFC that differed from the RFC which the ALJ ultimately assigned to Claimant. (*Id.* at 6).

In response, the Commissioner now agrees that remand of Claimant's case is warranted on the ground that it "would benefit by further development of the record and reevaluation of the Plaintiff's claim of disability." (ECF No. 17 at 1). The Commissioner confirms that upon remand the ALJ "will obtain supplemental vocational expert evidence to determine if the claimant could adjust to other work that exists in significant numbers in the national economy." (*Id.* at 2).

## V.   **Standard of Review**

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence.

Instead, the Court's function is to scrutinize the totality of the record and determine whether substantial evidence exists to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. Thus, the decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). If substantial evidence exists, then the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VI.    <u>Discussion</u>

Claimant argues that the ALJ's decision denying benefits was flawed because it was based upon expert opinions that were formulated using hypothetical scenarios which did not accurately incorporate the ALJ's stated RFC finding. (ECF No. 14 at 6). As a result, the ALJ's conclusion that Claimant was capable of performing the jobs identified by the vocational expert was not supported by substantial evidence. (*Id.* at 7). The undersigned agrees.

Once a claimant has proven that she is unable to perform past relevant work, the burden shifts to the Commissioner to show that the claimant can perform other work available in the national economy. This burden can be met in one of two ways. First, when the claimant has no significant nonexertional impairments and can perform a full range of work at a particular exertional level, the ALJ can apply the Medical-Vocational Guidelines (the "Grids") to show that the claimant is not disabled.

The Grids "contain numbered table rules which direct conclusions of 'disabled' or 'not disabled' where all of the individual findings coincide with those of a numbered rule." SSR 83-12, 1983 WL 31253, at *1 (S.S.A. 1983); *see* 20 C.F.R. Pt. 404, Subpart P,

Appendix 2. The Grids are intended to be utilized at the fifth step of the sequential process, for "cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 200.00. Thus, in determining whether there are jobs that exist in significant numbers in the national economy, the ALJ may rely upon the Grids "which take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." *Grant v. Schweiker*, 699 F.2d 189, 191-92 (4th Cir. 1983); s*ee also* 20 C.F.R. §§ 404.1569, 416.969.

However, when a claimant has significant nonexertional impairments, the Grids often do not provide adequate information for the ALJ to complete the disability analysis. 20 C.F.R. §§ 404.1569, 416.969. In this circumstance, the Commissioner meets her burden through the testimony of a vocational expert. Therefore, when a claimant has significant nonexertional impairments or has a combination of exertional and nonexertional impairments, the Grids provide only a framework to the ALJ, who must give "full individualized consideration" to the relevant facts of the claim in order to establish the existence of available jobs. *Id.* The ALJ must consult the Grids to determine whether a rule directs a finding of disability based on the strength requirement alone. If so, there is no need to assess the effects of nonexertional limitations. However, if the Grids direct a finding of "not disabled" based on the strength requirement alone, then the ALJ cannot rely on the finding and, instead, must establish the availability of jobs through the testimony of a vocational expert. *Walker v.*

8

*Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). Because the analysis subtly shifts at this step from an assessment of the claimant's limitations and capabilities to the identification of the claimant's potential occupational base, matching the appropriate exertional level to the claimant's RFC is the starting point. As the RFC is intended to reflect the **most** the claimant can do, rather than the least, the ALJ expresses the RFC in terms of the highest level of exertional work that the claimant is generally capable of performing, but which is "insufficient to allow substantial performance of work at greater exertional levels." SSR 83-10, 1983 WL 31251, at *4. From there, the ALJ must determine whether the claimant's RFC permits her to perform the full range of work contemplated by the relevant exertional level. *Id.* at *3-4. "[I]n order for an individual to do a full range of work at a given exertional level ... the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level." *Id.* at *3. If the claimant's combined exertional and nonexertional impairments allow her to perform many of the occupations classified at a particular exertional level, but not all of them, the occupational base at that exertional level will be reduced to the extent that the claimant's restrictions and limitations prevent her from doing the full range of work contemplated by the exertional level. *Id.* In making this determination, "the ALJ generally must accept evidence from a vocational expert, who, based on the claimant's age, education, work experience, and RFC, testifies whether there are jobs for such a person in the national economy." *Morgan v. Barnhart*, 142 F. App'x 716, 720-21 (4th Cir. 2005).

In order for a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *Walker*, 889 F.2d at 50-51; *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993). To frame a

proper hypothetical question, the ALJ must first translate the claimant's physical and mental impairments into a RFC that is supported by the evidence; one which adequately reflects the limitations imposed by the claimant's impairments. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart,* 181 F. App'x 359, 364 (4th Cir. 2006). A hypothetical question will be "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Id.* (citing *Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted). However, "[t]he Commissioner can show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national  economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan*, 142 F. App'x at 720-21.

In this case, because Claimant was an individual closely approaching advanced age, with a high school education, whose past relevant work was unskilled, an RFC finding that she was limited to sedentary work have directed a determination that she was disabled under the Grids. *See* Rule 201.12. 20 C.F.R. Pt. 404, Subpart P, Appendix 2. In contrast, if the ALJ found that Claimant was capable of performing a full range of light work, the Grids directed a finding of "not disabled" under Rule 202.13. *Id.* Here, the ALJ found that Claimant had the capacity to perform light work, but that she could never climb ladders/ropes/scaffolds; could only occasionally use ramps, climb stairs, balance, stoop, kneel, crouch, crawl, and reach overhead; could frequently handle and finger objects; needed to avoid concentrated exposure to cold, heat, vibration, pulmonary irritants, chemicals, and hazards; and was limited to simple, routine, repetitive tasks in a low-stress job involving only occasional decision-making and

changes in work setting. (Tr. at 19). In light of these additional nonexertional limitations, the ALJ was required to determine the extent to which Claimant's impairments reduced the occupational base of light level exertional work available to Claimant. Therefore, the ALJ appropriately arranged for the presence of a vocational expert at the administrative hearing to provide testimony on that issue.

During the administrative hearing, the ALJ posed a series of hypothetical questions to the vocational expert. These hypotheticals involved similar RFC's to that of Claimant's, except that they also limited the individual to "standing and walking two hours and sitting up to six hours in an eight hour day." (Tr. at 50, 52, 54). The vocational expert testified that such a claimant would be "essentially limited to sedentary work activity. . .with a standing limitation of two hours," (Tr. at 51), and could perform jobs such as an addresser or addressing clerk, ampoule sealer or pharmaceutical packager, and a call out operator, all *sedentary* positions. (*Id.*). The fourth hypothetical question asked by the ALJ contemplated an individual whose RFC was identical to Claimant's RFC, except that it also included the additional two hour stand/walk limitation. (Tr. at 54). In response, the vocational expert stated that such an individual would still be able to perform the jobs of an addressing clerk, ampoule sealer, and call out operator. (*Id.*). At no point during the administrative hearing did the vocational expert identify any light exertional level work that could be performed by an individual with Claimant's RFC. However, by the same token, the ALJ never presented the vocational expert with a hypothetical question that actually contained the RFC attributed to Claimant. The transcript suggests that the ALJ became somewhat confused by his own hypothetical scenarios, and ultimately he provided limitations to the expert that were consistent with a sedentary exertional level rather than with the light exertional level reflective of

11

Claimant's RFC.

Given Claimant's age, education, past relevant work, and the fact that Claimant was capable of performing light work, the ALJ's showing that there were sedentary jobs existing in sufficient numbers in the national economy that Claimant could perform was simply insufficient to meet the Commissioner's burden at the fifth step of the sequential evaluation process. Accordingly, the ALJ incorrectly relied upon the vocational expert's testimony that Claimant could work as an addresser, an ampule sealer, and a call-out operator, (Tr. at 23), to determine that she was not disabled. On the other hand, the evidence currently of record is also insufficient to direct a finding of disability. Instead, as the testimony of the vocational expert is incomplete, the record requires further development in order to properly conclude the disability analysis.

Therefore, the undersigned **FINDS** that the ALJ's decision is not supported by substantial evidence. Accordingly, this case should be reversed and remanded for further development.

## VII.   <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the District Court confirm and accept the findings herein and **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment, (ECF No. 13), **GRANT** Defendant's Motion to Remand, (ECF No. 17), **REVERSE** the decision of the Commissioner, **REMAND** this action for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United

States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**:  July 29, 2014.

Cheryl A. Eifert
United States Magistrate Judge